## Chicago Federation of Musicians Local No. 10 v. American Musicians Union of North America et al.

### Gen. No. 13,621.

Injunction—*what violation of, restraining interference with labor organization.* An injunction which restrains one labor organization from interfering with the employes of another, is violated by an act which has for its purpose and effect such interference; and the fact that the act in question may have been made under the guise of enforcing the rules and regulations of a voluntary association is not material.

Contempt proceeding. Appeal from the Circuit Court of Cook County; the Hon. Thomas G. Windes, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Affirmed. Opinion filed February 14, 1908.

Statement by the Court. This is an appeal from a decree of the Circuit Court adjudging appellant, its president and secretary, guilty of contempt. Each of these parties is charged with violation of an injunction which restrained them from interfering with members of the appellee organization, threatening their employers or would-be employers with the hostilty of labor unions and from obstructing them in obtaining or retaining employment as musicians. The order granting said injunction has been affirmed (Docket Number 13,352), and the opinion filed in that cause contains a statement of material facts upon which the decree therein is based.

Some months after the entry of the injunction order appellees filed a petition in the Circuit Court in which, among other things, it is alleged that appellant, its president and secretary, have hindered, obstructed and interfered with petitioners in the performance of their duties as musicians, that Joseph F. Winkler, president of appellant, and B. C. Dillon, secretary, with others have attempted by threats, intimidation and persuasion to compel employers of petitioners and their associates to refuse to retain petitioners and their as-

sociates or any of them in their employ as musicians and are now preventing and attempting in like manner to prevent petitioners and other members of appellees' organization from obtaining employment as musicians; that to this end said parties are combining and conspiring to restrain and prevent persons employing or desiring to employ petitioners or their fellow associates from so doing, and are so conducting themselves as to intimidate and frighten employers of petitioners and their associates.

The petition further sets forth that on August 5, 1906, an orchestra composed of members of the American Musicians Union, appellees herein, was employed at the Alhambra Theatre in Chicago assisting the actors therein to present a play called "The Cow Boy Girl"; that one H. E. Sigman, a member of the appellant Union, was employed at said theatre at that time as musical director of said play, whose duty it was under his contract to travel with and assist said actors in presenting said play; that said Winkler upon August 5th came into said theatre where said orchestra and company were rehearsing and ordered Sigman to leave the theatre, representing that said theatre was employing non-union musicians who were members of the American Musicians Union; that Winkler was told by Sigman that the company could not proceed without him and that he, Sigman, must remain. It is alleged that said Winkler thereupon preferred charges against Sigman with the appellant Union and, upon August 7th, the appellant organization by its Secretary Dillon caused notice to be given Sigman to appear before its directors to answer said charges; that Sigman was fined for playing at said theatre and thereby induced to leave his employment at said theatre; all of which it is alleged was done for the wrongful purpose of causing trouble and inconvenience to the managers of the theatre who were employers of members of the petitioners, the American Musicians Union, and to the members of said Union and cause such members to be discharged by the managers of the theatre.

Affidavits were filed in support of the averments of the pe-

tition and upon hearing the appellant, Chicago Federation of Musicians, the said Winkler, its president, and the said Dillon, its secretary, were each adjudged in contempt of court and respectively fined.

The decree finds that with knowledge of the said injunction then in force, said defendants, the Chicago Federation of Musicians, Joseph F. Winkler, its president, and B. C. Dillon, its secretary, under pretense of enforcing a by-law of the appellant Chicago Federation of Musicians, which provides that no member shall render services at any function, public or private, except parades of the State militia, unless all bands or orchestras performing at said function are composed of members in good standing of the Chicago Federation of Musicians, hindered and prevented said Sigman from continuing his employment at said theatre for the express purpose of interfering with the employment of members of the petitioners' organization and in violation of the injunction. It is further found that the acts of appellant were wilfully done with full knowledge of the injunction for the purpose of interfering with the employment of the petitioners, and for the unwarranted purpose of preventing them from freely engaging in their profession as musicians at said theatre. The decree adjudges appellant guilty of contempt for violation of the injunction and imposes a fine of three hundred dollars.

The court finds as to said Winkler that he aided and abetted, by the coercive means of assessing a fine, in hindering and preventing Sigman from continuing in his said employment and for the express purpose of interfering with the employment of members of complainant organization who composed said orchestra at said theatre, in violation of said injunction. He is accordingly adjudged guilty of contempt and fined the sum of two hundred dollars.

A like finding is made as to said B. C. Dillon, who is fined fifty dollars.

Appellant, Winkler, its president, and Dillon, its secretary, prosecute their separate appeals. The facts and the arguments of counsel are substantially alike in each case

and what is said in one is in substance applicable to the others.

WHITFIELD & WHITFIELD, for appellant.

A. C. ALLEN, for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is urged in behalf of appellant, the Chicago Federation of Musicians, that its act in fining Sigman was lawful, and was done for the purpose of benefiting its membership, not for the wanton purpose of injuring appellees or their employers, and that tribunals of voluntary organizations have power to discipline their members. The evidence, however, does not sustain the contention that the fine imposed upon Sigman in view of the manner in which it was done was not for the wanton purpose of injuring appellees and their employers, in violation of the injunction. If such was its purpose, then it is not material that appellant may have power to discipline its members, nor that it may have had power to impose upon Sigman the fine in question, at a proper time and in a proper manner. There is evidence not disputed tending to show acts on the part of appellant's officers and agents which are only explainable on the theory of an ulterior and more far reaching purpose than merely to benefit its own members. It appears that Sigman was employed as musical director for the company which was giving the play called "The Cow Boy Girl" at the Alhambra Theatre, that he was the only person who then had "sufficient knowledge of the play to rehearse the company and act as musical director," and that interference with him at that time, preventing him from doing the work for which he was employed, would make it impossible for the company to proceed with its performance, and would cause considerable loss. It would cause Sigman to lose his position, but its effect upon his fortunes is not now material. On the 5th of August, while the play in question was being presented, appellant's president Winkler came into the theatre while the company

was engaged in rehearsing and ordered Sigman to leave. It was explained to him by Sigman, who was a member of the American Federation of Musicians with which appellant is connected, that for Sigman to leave would stop the performance. Winkler said to Sigman, "We can't allow you to play here. This is a non-union house. This house is on the unfair list." Sigman replied, referring to the orchestra employed at the Alhambra Theatre, who are members of the appellee American Musicians Union, "Why, these musicians are union men"; to which Winkler replied, "No they are not," and then told Sigman, "These people have an injunction to play here." When told that the play could not go on unless Sigman continued, Winkler replied, "That don't make any difference, we won't allow you to play here." The manager of the theatre states that Winkler said to him, "This man Sigman cannot play or lead, or direct the music in this house with these other musicians; they don't belong to the American Federation of Musicians." The manager said, "They are union men, are they not?" Winkler said, "We don't recognize them and this man Sigman can't play here if they play and this house is on the unfair list and we won't allow him to play here. He knows he can't play here with these fellows." Winkler was then told by the manager that without Sigman the presentation of the play which was booked for that afternoon could not go on. Sigman apparently did go on with the play on that occasion, but on the 10th of August following he came to the theatre before the matinee of that day and told the members of the orchestra who were members of the appellee organization that he could not play with them any more, that "They won't let me. They have fined me twenty dollars and the manager has paid my fine." At the time Winkler interfered at the theatre there was a delay in the rehearsal of twenty or thirty minutes and the attention of all was directed to Winkler's presence and interference. This evidence is not denied. It tends to show that Winkler knew of an injunction in favor of appellees; that his object as an officer and agent of appellant was to compel the operators of the theatre to discharge the

members of the orchestra belonging to the American Musicians Union; that to effect this object he endeavored to prevent the play from proceeding, knowing that without Sigman the performance announced for that day could not go on, and that to stop the performance announced would be injurious to the theatre and the company of actors engaged there; that the reason given for his conduct was that the theatre was on the unfair list because it employed in its orchestra members of the appellee's organization; that by means of the fine imposed on Sigman, appellant did compel Sigman to abandon his employment; and that the fine was paid not by Sigman but by the manager.

It appears further that subsequently one of the managers and owners of the theatre was called on by several parties, one of whom was president of the Chicago Federation of Labor, another was president of the American Federation of Musicians, and the others were Winkler, president, and Dillon, secretary of the Chicago Federation of Musicians, appellant herein. After a conference which it is not now necessary further to allude to, the visitors left with the threat to put the theatre "on the unfair list" because it employed members of the appellee organization.

The evidence, we think, establishes beyond controversy that appellant, as well as its officers who have also appealed, were violating the injunction then in force. It is said this is a controversy between opposing union labor organizations and not between a labor union and employees. The principles applicable are the same in either case. Nor does the injunction deprive appellant organization, as its counsel contend that it does, of the power to discipline its own members. The grounds upon which the decree fining appellant for contempt rest, in no way touch upon the power to discipline Sigman or any other member of this or any other labor union for violation of any valid rules of such organizations. The interference and intimidation disclosed by the uncontradicted evidence was and is unlawful and a violation of the injunction. As was said in the opinion of this court upon the original injunction: "The real purpose of such

acts was to drive out of business musicians not connected with the union labor organization with which the appellant Federation is affiliated; in other words, those whom it chooses to regard as non-union men." Acts of this character by appellant cannot be justified under cover of a pretense that they are done merely to discipline its own members, when as here disclosed beyond legitimate controversy, the real purpose of appellant was to drive appellees out of employment and to this end to injure their employers. In Boutwell v. Marr, 42 Atlantic Rep., 607 (43 L. R. A. 803–805), it was said by the Vermont court, "It is clear that the law cannot concede to organizations of this character the powers and immunities claimed for their associations by these defendants and retain its own power to protect the individual citizen in the free enjoyment of his capital or labor." In the same case it is said: "Without undertaking to designate with precision the lawful limit of organized effort, it may safely be affirmed that when the will of the majority of an organized body, in matters involving the rights of outside parties, is enforced upon its members by means of fines and penalties, the situation is essentially the same as when unity of action is secured amongst unorganized individuals by threats and intimidations." A fine imposed upon a member of a voluntary organization for purposes of discipline may be perfectly proper and lawful; but a fine imposed upon such member for the purpose of coercing him into injuring another in person or property or compelling him to do a criminal act would be neither. It would be as said in Toledo A. A. & N. M. Ry. Co. v. Penn. Co. et al., 54 Fed. Rep., 730, "a criminal conspiracy against the laws of their country." The fact that such fine imposed upon its own members might be entirely lawful and just, when so imposed for a lawful purpose, cannot justify its infliction for a wrongful purpose in violation of a restraining order of court.

Finding no error in the record, the decree of the Circuit Court must be affirmed.

*Affirmed.*